UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL ITURBE-GONZALEZ, | Case No. 1:23-cv-00178-CDB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS AND DISMISS PETITION |
| v. | |
| FCI MENDOTA WARDEN, | (Docs. 1, 19) |
| Respondent. | 14-DAY DEADLINE |
| | <u>Clerk of Court to Assign District Judge</u> |

Petitioner Angel Iturbe-Gonzalez, ("Petitioner") is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, filed February 6, 2023. (Doc. 1). Petitioner is currently in the custody of the Bureau of Prison ("BOP") at the United States Penitentiary Lompoc. *Id.*[1] Petitioner challenges BOP policy 5410.01, which "excludes eligible inmates including Petitioner from applying First Step Act ("FSA") earned time credits on the basis of having a detainer." *Id.* at 2.

On April 13, 2013, the Court conducted a preliminary review of the petition and directed Respondent to file a response to the petition. (Doc. 5). On June 14, 2023, Respondent filed a motion

---

[1] Petitioner filed his petition while he was in custody at FCI-Mendota within the Eastern District of California. *See Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) (jurisdiction remains where the petition has been filed and is not destroyed by transfer of the petitioner).

1

to dismiss. (Doc. 10). Thereafter, on July 31, 2023, Respondent filed a motion to stay proceedings and a motion for leave to file an amended (superseding) motion to dismiss. (Doc. 13). Respondent stated its June 14, 2023, motion to dismiss was based on inaccurate information supplied by the BOP. *Id*. at 2. On August 21, 2023, the Court stayed the proceedings and granted Respondent leave to file an amended (superseding) motion to dismiss. (Doc. 16).

On September 13, 2023, Respondent filed a superseding motion to dismiss. (Doc. 19). Respondent asserts BOP records indicate Petitioner was determined eligible to earn and was awarded FSA earned time credits. *Id*. at 2. Respondent argues Petitioner obtained the relief he sought through his § 2241 petition and, thus, that this matter is now moot. *Id*. Further, Respondent argues Petitioner has failed to demonstrate administrative exhaustion. *Id*. at 3-4. Petitioner has not filed an opposition to Respondent's motion to dismiss and his time to do so has expired. *See* Local Rule 230(*l*). Accordingly, the Court will recommend that Respondent's motion to dismiss be granted.

**Analysis**

I. Motion to Dismiss

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition. R. Governing 2254 Cases 4.[2] The Advisory Committee Notes to Habeas Rule 4 provide that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent." A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Habeas Rule 4. *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990). A district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief. *Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019).

II. The FSA

The FSA was enacted on December 21, 2018, and implemented several prison and sentencing reforms, including provisions governing computation of good time credits, reducing and restricting

---

[2] The Rules Governing § 2254 cases in the United States Courts ("Habeas Rules") are appropriately applied to proceedings undertaken pursuant to 28 U.S.C. § 2241. Habeas Rule 1(b).

2

mandatory minimum sentences, safety valve eligibility, retroactive application of the FSA, and the availability of early release. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

With respect to earned time credit, the Ninth Circuit has described the FSA's amendments as follows:

> [P]aragraph 102(b)(1) amends [18 U.S.C.] § 3624 by adding subsection (g), which is relevant to the Act's creation of an earned time credit system. [132 Stat.] at 5210-13. The Act requires that, within 210 days of its enactment, the Attorney General establish a "risk and needs assessment system" to, broadly speaking, review each prisoner's recidivism risk level, award earned time credit as an incentive for participation in recidivism reduction programming, and "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624." § 101(a), 132 Stat. at 5196-97. Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release. § 102(b), 132 Stat. at 5210-13.

*Bottinelli v.* Salazar, 929 F.3d 1196, 1197-98 (9th Cir. 2019). In accordance with 18 U.S.C. § 3622, the United States Department of Justice published the risk and needs assessment system on July 19, 2019. Press Release, *Department of Justice Announces the Release of 3,100 Inmates Under First Step Act*, Publishes Risk And Needs Assessment System (July 19, 2019), https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and (last visited October 5, 2023).

With respect to the implementation of the risk and needs assessment system, 18 U.S.C. § 3621(h) provides:

> (1) In general - Not later than 180 days after the Attorney General completes and releases the risk and needs assessment system (referred to in this subsection as the "System") developed under subchapter D, the Director of the Bureau of Prisons shall, in accordance with that subchapter—
>
> (A) implement and complete the initial intake risk and needs assessment for each prisoner (including for each prisoner who was a prisoner prior to the effective date of this subsection), regardless of the prisoner's length of imposed term of imprisonment, and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination;
>
> (B) begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers and add any new evidence-based recidivism reduction programs and productive activities necessary to effectively implement the System; and
>
> (C) begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and

> completing the effective evidence-based recidivism reduction programs and productive activities.
>
> (2) Phase-in.--In order to carry out paragraph (1), so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the Bureau of Prisons shall—
>
> > (A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and
> >
> > (B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.

18 U.S.C. § 3621(h)(1) – (2). Pursuant to 18 U.S.C. § 3621(h)(1), all inmates in the BOP system were to receive an initial assessment using the risk and needs assessment system known as the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN") by January 15, 2020. Press Release, *Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation* (Jan. 15, 2020), https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act (last visited October 5, 2023).

On January 13, 2022, the Department of Justice announced that the BOP had finalized the FSA time credit rule, and on January 19, 2022, the final rule was published. FSA Time Credits, 87 Fed. Reg. 2705-01, 2022 WL 159155 (Jan. 19, 2022) (codified at 28 C.F.R. §§ 523, 541). Prisoners "who successfully complete[ ] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A). A prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii).

Inmates may begin earning FSA time credits after the inmate's term of imprisonment commences, but an inmate cannot earn credits for programming or activities in which he or she participated prior to December 21, 2018. 28 C.F.R. § 523.42.  Further, an inmate can earn retroactive application of time credits for programming or activities in which he or she participated from December 21, 2018, to January 13, 2022.  *Id*.

"Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release," *Bottinelli*, 929 F.3d at 1198, and provides that the "Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, shall issue guidelines for use by the Bureau of Prisons in determining the appropriate type of prerelease custody or supervised release and level of supervision for a prisoner placed on prerelease custody pursuant to this subsection,"  18 U.S.C. § 3624(g)(6)(A).

III. Mootness

Under Article III, Section II of the Constitution, a federal court's jurisdiction is limited to adjudication of "live" cases and controversies.  *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). Federal courts consider various doctrines, including standing, ripeness, and mootness to ascertain whether an action meets the "case and controversy" requirement.  *Poe v. Ulman*, 367 U.S. 497, 502-05 (1961).  To maintain a claim, a litigant must continue to have a personal stake in all stages of the judicial proceeding.  *Abdala v. INS*, 488 F.3d 1061, 1063 (9th Cir. 2007) (internal citation omitted). A case must be dismissed if it becomes moot at any stage.  *Iron Arrow Honor Soc'y. v. Heckler*, 464 U.S. 67, 70-71 (1983) (per curiam).  A case becomes moot if "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1984) (internal quotations and citation omitted).

Petitioner alleges the BOP found him ineligible for FSA earned time credits on the grounds that he was the subject of a detainer.  (Doc. 1 at 2).  Prior to November 18, 2022, the BOP deemed inmates with detainers ineligible for FSA credits.  However, on November 18, 2022, the BOP issued Program Statement 5140.01 wherein the BOP modified its procedures to allow inmates with detainers to earn credits; nevertheless, the inmates still could not have those credits applied until the detainers were resolved. *Otuya v. Warden*, No. 1:22-cv-01615-SKO (HC), 2023 WL 3254438, at *3 (E.D. Cal.

May 4, 2023), *F&R adopted*, 2023 WL 6059730 (Sept. 18, 2013). On February 6, 2023, the BOP issued a change notice to the program statement in which the BOP deleted the requirement that inmates have no detainers in order to have earned time credits applied to their sentence. *Id*. Thus, Petitioner is no longer barred from earning credits and having them applied to his sentence due to the detainer. In fact, BOP records indicate that Petitioner is eligible to earn and apply FSA credits, and the BOP has applied 365 days toward Petitioner's sentence resulting in an advanced release date. (Doc. 19 at 2-3). Accordingly, Respondent correctly asserts that the underlying matter has become moot.

### IV. Exhaustion

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam). The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990). Thus, "because exhaustion is not required by statute, it is not jurisdictional." *Id*. If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustions and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court." *Id*.

The first step in exhausting administrative remedies is a request for informal resolution. 28 C.F.R. § 542.13. When informal resolution procedures are inadequate, the BOP makes available to inmates a formal three-level administrative remedy process: (1) a Request for Administrative Remedy ("BP-9") filed at the institution where the inmate is incarcerated; (2) a Regional Administrative Remedy Appeal ("BP-10") filed at the Regional Office for the geographic region in which the inmate's institution is located; and (3) a Central Office Administrative Remedy Appeal ("BP-11") filed with the Office of General Counsel. 28 C.F.R. § 542.10 et. seq.

Respondent asserts Petitioner has never requested relief through the BOP's administrative remedy process concerning the instant claims. (Docs. 19 at 1, 3-4; 19-1 at 4). Thus, the claims are unexhausted. The exhaustion requirement "is not lightly to be disregarded." *Murillo v. Matthews*, 588 F.2d 759, 762 n.8 (9th Cir. 1978) (citation omitted). A "key consideration" in exercising such

discretion is whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme[.]" *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation omitted).  Petitioner contends that exhaustion is futile since the BOP's position that he is statutorily barred from earning FSA credit is established policy.  (Doc. 1 at 16-18).  As previously discussed, the BOP has since altered its position such that he is not statutorily barred from earning FSA credits.  Therefore, exhaustion would not be futile, and the exhaustion requirement should not be excused in this case.

**Conclusion**

Based on the foregoing, the Court concludes that the petition is moot and unexhausted.  Accordingly, it is HEREBY ORDERED:  the Clerk of Court is directed to assign a District Judge to this action.

The Court FURTHER RECOMMENDS:

1. Respondent's motion to dismiss (Doc. 19) be GRANTED; and
2. Petitioner's petition for writ of habeas corpus (Doc. 1) be DISMISSED WITH PREJUDICE and without leave to amend.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days after being served with these findings and recommendations, Petitioner may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __October 10, 2023__                      _____
                                                   UNITED STATES MAGISTRATE JUDGE